UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MELVIN STANLEY | No. 3:16-cr-25 (SRU) |

### RULING AND ORDER

Melvin Stanley was arrested at his home in the early morning of June 11, 2015, and later charged with unlawful possession of firearms by a convicted felon. On the day of his arrest, he made statements to the police while being questioned in his home and also while being questioned at the New Haven Police Department (first by officers of that department and later in the evening by officers of the Hamden Police Department). He now moves to suppress those statements on the grounds that their admission into evidence will violate his Fifth Amendment rights because his *Miranda* waivers and subsequent statements were not made voluntarily. I held an evidentiary hearing on May 19, 2016, and heard the testimony of three interviewing officers. I also admitted into evidence and reviewed Stanley's medical records (relating to a short hospital visit made at his request after he was arrested) and the lengthy video recordings of the interviews at the New Haven Police Department. For the reasons that follow, Stanley's motion to suppress (doc # 27) is denied.

**I.      Standard of Review**

"A statement made by the accused 'during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused in fact knowingly and voluntarily waived [*Miranda*] rights when making the statement.'" *United States v. Taylor*, 745 F.3d 15, 23

(2d Cir. 2014) (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010)). In order to determine that a waiver was knowing and voluntary, courts must look at the totality of the circumstances, *id.*, and the burden of proof lies with the government. *Colorado v. Connelly*, 479 U.S. 157, 168–69 (1986). "'[K]nowing' means with full awareness of the nature of the right being abandoned and the consequences of abandoning it, and 'voluntary' means by deliberate choice free from intimidation, coercion, or deception." *Taylor*, 745 F.3d at 23 (citing *United States v. Plugh*, 648 F.3d 118, 127 (2d Cir. 2011)). Reading and signing a *Miranda* waiver form before making a statement is generally effective as a knowing and voluntary waiver, *see id.* (citing *Plugh*, 648 F.3d at 127–28), but the signed form alone—even if signed knowingly and voluntarily—does not conclusively show that subsequent statements were made voluntarily. *Id.* "A confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given." *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991). "An individual's mental state should be considered in the voluntariness inquiry to the extent it allowed law enforcement to coerce the individual." *Taylor*, 745 F.3d at 24.

"It is difficult to determine whether a confession is voluntary; case law yields no talismanic definition for the term. It is clear, however, that when a person is unconscious or drugged or otherwise lacks capacity for conscious choice, a confession cannot be voluntary." *Id.* (quotations and citations omitted). "Continued questioning of a sleep-deprived suspect can be coercive, depending on the circumstances, but the decisive issue is whether the will was 'overborne' by the police, so that the defendant is not using such faculties as he has." *Id.* at 25.

**II.   Discussion**

Stanley relies heavily on *United States v. Taylor*, which is quoted extensively above in the discussion of the standard for challenges to the voluntariness of *Miranda* waivers. The

Second Circuit in *Taylor* held that the defendant-appellant's inculpatory statements were not voluntarily made, despite a *Miranda* waiver, and the panel indicated that it was "a close case." 745 F.3d at 19. That closeness is underscored by the fact that six judges of the Second Circuit (one shy of the number required to grant a request for rehearing *en banc*) signed a dissent from the denial of rehearing *en banc* suggesting that they would have reversed the panel. *See United States v. Taylor*, 752 F.3d 254, 257 (2d Cir. 2014) (Raggi, J., dissenting from denial of rehearing *en banc*) (opining that the panel's "conclusions defy not only common sense but also controlling precedent"). Moreover, based on the panel's description in *Taylor*, that "close" case appears—especially compared to this one—quite severe: during his interrogation, Taylor was "largely stupefied" and "fell asleep repeatedly during questioning and was only intermittently alert," 745 F.3d at 20; a detective reported that "it seemed like Taylor's body was 'somewhat shutting down' during" questioning, *id.*; and a doctor testified that Taylor "'presented with a thought disorder,' drooled, was vague, stared blankly," that "'his thoughts lacked spontaneity,'" and that "'if you asked him questions, he really couldn't elaborate on them because his thought process was impaired.'" *Id.* at 21 (brackets removed). The panel held that, though his "incriminating statements were made in relatively lucid intervals, Taylor was impaired throughout, and his interrogators took undue advantage of that impairment by continuing to question him." 745 F.3d at 20.

      The facts in the present case, which are mostly undisputed, stand in stark contrast to that description. Members of the New Haven Police Department and ATF Task Force executed a search warrant on Stanley's home in the early morning hours of June 11, 2015. Following the discovery of firearms, Stanley was advised of his *Miranda* rights. He subsequently told the officers that the guns were his and that he would give them more details at the police station.

Before going to the station, however, Stanley asked to be taken to the hospital: he had been released from the hospital only a few days earlier, after having been shot in the face and sustaining serious damage to his eye, which required surgery. The police took him to the hospital, and he was treated briefly by a nurse practitioner, who indicated in a report (which was admitted into evidence) that he complained of eye pain and wished "to remain in the hospital because it is dirty in the jail and 'they will not let me use my eye drops.'" The report indicated that he was "alert and oriented to person, place, and time," and that he had "a normal mood and affect. Judgment Normal." The police agreed that he would be permitted to use his eye drops on a schedule, and he was discharged into their custody. That afternoon, the police questioned Stanley at the New Haven Police Department—the entire interview was video and audio recorded, and the recording is in evidence. He was again informed of his *Miranda* rights (this time on video), he indicated that he understood them, and he signed a written waiver. During the interview, he made various inculpatory statements. Later than night, he was interviewed again on camera, this time by the Hamden Police Department. He acknowledged that he had previously been advised of his rights and again agreed to speak with the police.

      Stanley alleges that, in addition to the prescription pain medication he was taking for his eye, he was supplementally self-medicating with nonprescription narcotics, marijuana, and alcohol. He argues that, because of the effects of those drugs, his will was overborne and his *Miranda* waiver and inculpatory statements were involuntary. The government argues that whatever the effect of his medication (or other drugs), he was not so impaired that he was incapable of knowingly and voluntarily waiving his *Miranda* rights. The testimony of the officers about his demeanor and apparent ability to understand his rights was credible, and especially so because it is consistent with the video and audio recordings of Stanley's interviews.

In those recordings, Stanley's demeanor is consistent with a person who is tired or relaxed. Although he yawned a number of times and he occasionally rubbed the area around the bandages on his eye and at one point smokes a cigarette, he appeared to be awake and alert throughout and to answer questions willingly and coherently. Even if he was under the influence of his pain medication, or of whatever other substances he consumed early in the morning or the previous night, his condition does not appear comparably severe to the description of the defendant-appellant in *Taylor*, and it does not appear that his will was overborne by the police. In light of the fact that *Taylor* was a close case, I must conclude that this one is not. Stanley was advised of his *Miranda* rights orally at his home and both orally and in writing at the police department; he waived them on both occasions, the second time in writing. The government's proffer of police testimony, medical records, and especially video and audio recordings is sufficient to show by a preponderance of the evidence that his waiver and subsequent inculpatory statements were knowing and voluntary by the standard articulated in *Taylor*. Stanley's motion to suppress (doc. # 27) is therefore denied.

    So ordered.

Dated at Bridgeport, Connecticut, this 1st day of June 2016.

                          /s/ STEFAN R. UNDERHILL
                          Stefan R. Underhill
                          United States District Judge